OPINION
{¶ 1} Plaintiffs-appellants, Helena Inlow, individually and as administratrix of the estate of Earl Ernst, Jacqueline Hiller, administratrix of the estate of Donna Ernst, Lenora Davis, and William Storck, appeal a decision of the Clermont County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Liberty Mutual Insurance Company, in a declaratory judgment action.
 {¶ 2} On February 28, 1999, pedestrians Earl and Donna Ernst were crossing Eastgate South Drive when they were struck by an automobile. The auto was driven by Timothy Davis whom appellants allege was intoxicated. Both Earl and Donna died as a result of the injuries they sustained. At the time of the accident, Earl was employed by Bigg's Hyper Shoppes Inc. ("Bigg's"), a wholly-owned subsidiary of Supervalu, Inc. ("Supervalu"). It is not disputed that he was not acting in the course or scope of his employment when the accident occurred.
 {¶ 3} Supervalu is insured by appellee, Liberty Mutual Insurance Co. ("Liberty Mutual"). Supervalu's Liberty Mutual insurance policy was first issued on March 1, 1984. Bigg's was added as a named insured on March 1, 1995. The policy was renewed on March 1, 1998 and continued through March 1, 1999. The insurance policy provides bodily injury and property damage coverage of $2,000,000 per occurrence, and $2,000,000 in the aggregate. Separate premiums were charged and paid for general liability coverage and automobile liability coverage. In a notice provided to Supervalu in 1996, Liberty Mutual informed Supervalu that, pursuant to Ohio law, uninsured/underinsured ("UM/UIM") coverage was available with limits equal to its bodily injury liability coverage. Supervalu declined the coverage in a written rejection signed by corporate risk manager, Paul Hajduk, on February 21, 1996.
 {¶ 4} Appellants brought suit, in part seeking a declaration that Earl and Donna Ernst were insureds under the Liberty Mutual insurance policy. Appellants alleged that the coverage arose as a matter of law under R.C. 3937.18 as UM/UIM motorist coverage was neither offered to Bigg's by Liberty Mutual as required by Ohio law, nor properly rejected by Bigg's. Liberty Mutual moved for summary judgment, arguing that it had made a valid, written offer of UM/UIM coverage and that Supervalu had executed a written rejection of that coverage. Liberty Mutual argued that Supervalu's rejection of the coverage constituted a rejection on behalf of its separately incorporated, wholly-owned subsidiary, Bigg's.
 {¶ 5} The trial court granted the insurer's motion for summary judgment, concluding Liberty Mutual had offered UM/UIM coverage to Supervalu; that Supervalu had rejected the coverage; and, that the rejection of the coverage was made on behalf of both Supervalu and Bigg's, its subsidiary. The trial court thus concluded that UM/UIM coverage had not arisen as a matter of law, and entered judgment in favor of Liberty Mutual. From this decision, appellants appeal, raising three assignments of error.
Assignment of Error No. 1
 {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE WHEN THE RECORD REFLECTS QUESTIONS OF MATERIAL FACT EXIST WITH RESPECT TO APPELLEE'S CLAIMS."
 {¶ 7} An appellate court conducts a de novo review of a trial court's decision granting summary judgment. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56(C), a movant requesting summary judgment must demonstrate: (1) that there exists no genuine issue of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Civ.R. 56(C); Welco Industries,Inc. v. Applied Companies, 67 Ohio St.3d 344, 346, 1993-Ohio-191.
 {¶ 8} Appellants first contend that Liberty Mutual's offer of UM/UIM coverage was insufficient to satisfy the requirements of the applicable version of R.C. 3937.18.[1] This version of the statute required automobile liability insurers to offer their insureds UM/ UIM coverage in an amount equal to the policy bodily injury liability limits. R.C. 3937.18(A)(1)-(2). Interpreting this statute, the Ohio Supreme Court has held that the offer of UM/UIM coverage must be made in writing. Gyori v. Johnston Coca-Cola Bottling Group, 76 Ohio St.3d 565,568, 1996-Ohio-358. It has further held that the written offer must contain the following elements: "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Linko, Exr. v. Indemnity Ins. Co. of No. America,90 Ohio St.3d 445, 449, 2000-Ohio-92.
 {¶ 9} In the present case, Liberty Mutual provided Supervalu with a written offer of UM/UIM coverage. The offer informs Supervalu that it is entitled to UM/UIM coverage with "limits equal to Bodily Injury Liability Coverage limits." The offer further informs Supervalu that it may "accept these limits, select lower limits or reject this coverage entirely." The offer sets forth premiums for UM/UIM coverage up to $1,000,000, despite the fact that Supervalu was insured with bodily injury liability coverage up to $2,000,000.
 {¶ 10} Because of this discrepancy, appellants argue that Liberty Mutual's offer of UM/UIM coverage failed to meet the Linko criteria and thus conclude that a valid offer was not made. Absent a valid offer, appellants contend that Supervalu could not have tendered a knowing rejection of UM/UIM coverage.
 {¶ 11} Liberty Mutual urges us to conclude that the amendment of R.C. 3937.18 by Am.Sub.H.B. 261 precludes application of the Linko
requirements. Liberty Mutual contends that under the amended statute, any written rejection creates the presumption of a valid offer regardless of compliance with Linko. In support of this position, Liberty Mutual directs our attention to Hindall v. Winterther Int'l. (N.D.Ohio., Mar. 29, 2001), No. 3:00CV7429, unreported. In Hindall, the reviewing court held that the amended statute obviated the need for insurers to comply with the Linko requirements when offering UM/UIM coverage. However, whether the result of inadequate research or disingenuous argument, Liberty Mutual fails to point out a subsequent, published decision issued by the same court, authored by the same judge, which abandoned this reasoning. See Blatt v. Pacific Employers Ins. Co. (N.D.Ohio. 2002),220 F. Supp.2d 861, 867. In that decision, the court opted in favor of following a majority of Ohio appellate courts which have held that H.B. 261 did not abrogate the Linko requirements. Id. (Citations omitted.)
 {¶ 12} Further research reveals that the Ohio Supreme Court has dealt with this precise issue in a dispositive manner. Presented with the same proposition appellee posits, the Ohio Supreme Court unequivocally held that the Linko requirements are applicable to an offer of UM/UIM coverage written after the enactment of H.B. 261. Kemper v. MichiganMillers Mutual Insurance Co., 98 Ohio St.3d 162, 2002-Ohio-7101 at ¶¶ 2-4. In accordance with this opinion, we likewise hold that Liberty Mutual was required to comply with the Linko requirements when making an offer of UM/UIM coverage under R.C. 3937.18, as amended by H.B. 261.
 {¶ 13} Reviewing Liberty Mutual's offer of UM/UIM coverage, we find that it does comply with the requirements set out in Linko. The offer contains a description of both uninsured and underinsured motorist coverage, expressly states that the insured may opt for coverage with limits equal to the bodily injury liability coverage, and provides premium information. While the offer fails to provide premium information for coverage up to Supervalu's bodily injury limits, when read as a whole, the offer clearly informs the insured that such coverage is available and allows the insured "to make an express, knowing rejection of the coverage." Linko, 90 Ohio St.3d at 449; see, also, Manalo v.Lumberman's Mutual Casualty, Montgomery App. No. 19391, 2003-Ohio-613 (selection of UM/UIM coverage in amount less than liability coverage limits was effective, even though the selection/rejection form failed to comply with the Linko requirement to include a statement of the premium for the selected coverage).
 {¶ 14} The knowing nature of the rejection is further evidenced by Hajduk's affidavit. In it, he states that Liberty Mutual "offered UM/UIM coverage equal to the Bodily Injury Liability Coverage limits of $2,000,000, and indicated that this coverage could be accepted, lowered, or rejected." We thus find appellants' first contention to be without merit.
 {¶ 15} We next turn to appellants' contention that the rejection of UM/UIM coverage executed by Hajduk on behalf of Supervalu does not constitute a valid waiver as to Supervalu's wholly-owned, separately incorporated subsidiary, Bigg's. Appellants point out that the written rejection executed by Hajduk purports to reject the coverage only on behalf of Supervalu and does not name Bigg's as an insured.
 {¶ 16} Liberty Mutual counters that the written rejection, although naming only Supervalu as an insured, constitutes a valid rejection of UM/UIM coverage on behalf of Bigg's. Liberty Mutual points to the fact that Hajduk was the only individual with authority to reject the coverage on behalf of either Supervalu or Bigg's. In support of this contention, Liberty Mutual offered the affidavit of Hajduk in which he asserts that, in 1996, he was the only person who had the authority to reject UM/UIM coverage on behalf of Bigg's, and that he had indeed intended to reject the coverage for both Supervalu and Bigg's when he executed the written rejection.
 {¶ 17} In agreement with this contention, the trial court found no evidence "that any separate authority was designated to accept or reject coverage for Bigg's," and concluded that "such authority was vested solely in Mr. Hajduk, who properly rejected the offer of UM/UIM coverage on February 26, 1996." We find this conclusion erroneous.
 {¶ 18} Under former R.C. 3937.18(C), UM/UIM coverage arose by the operation of law and could be removed from an insurance policy "only by the express rejection of that provision by the insured." Linko at 449 quoting Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161. Consequently, each corporation which is a named insured in a single policy must be offered UM/UIM insurance before its authorized representative can refuse the coverage. Linko at 449. While a parent corporation may have a close relationship with its subsidiary, the two remain separate and distinct legal entities. Id. citing North v. HigbeeCo. (1936), 131 Ohio St. 507. Accordingly, an offer of UM/UIM coverage to a parent corporation "does not per se constitute an offer to the subsidiary." Id. at 449. "Without the name of the entity on the selection form, no offer of UM/UIM coverage has been made to that entity." Linko at 450.
 {¶ 19} In the present case, the offer of UM/UIM coverage was made to, and the written rejection executed by, the parent corporation, Supervalu. Neither the offer of coverage nor the written rejection names Supervalu's incorporated subsidiary, Bigg's. Contrary to the trial court's conclusion, a rejection of UM/UIM coverage on behalf of Bigg's cannot be inferred from Supervalu's rejection. Id. Hajduk's intent in signing the rejection is of no consequence as the rejection fails to name Bigg's as an insured to whom an offer of coverage was made and rejected. Id. We find telling Liberty Mutual's statement in its appellate brief that Hajduk "was the one and only person who could have rejected UM/UIM coverage for Bigg's." (Emphasis added.) While this statement is supported by his affidavit, the evidence does not demonstrate that Hajduk actually declined the coverage for Bigg's. The written rejection simply fails to name Bigg's as an insured. Absent a written rejection, no inference can be made as to Hajduk's intent to reject UM/UIM coverage on behalf of Bigg's. See id.
 {¶ 20} Accordingly, we overrule in part, and sustain in part, appellants' first assignment of error, and remand this matter to the trial court for further consideration consistent with this opinion.
Assignment of Error No. 2
 {¶ 21} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE AND IN OVERRULING APPELLANT'S MOTION FOR SUMMARY JUDGMENT BY CONSIDERING AND RELYING UPON LEGISLATION THAT WAS NOT IN EFFECT AND DID NOT HAVE RETROACTIVE EFFECT UPON CONTROLLING LAW DURING THE RELEVANT TIME PERIOD."
 {¶ 22} In its decision, the trial court quoted extensively from the uncodified portion of R.C. 3937.18, adopted in 2002,[2] which expresses the Ohio legislature's intent in adopting certain revisions to the statute. The trial court stated that it found review of the legislation necessary "as acknowledgment that the law in its prior state was too vague to fulfill its objective `to protect and preserve stable markets and reasonable rates for automobile insurance for Ohio consumers.'"
 {¶ 23} As noted earlier in this opinion, it is well-established that, for purposes of determining the scope of UM/UIM coverage, the statutory law in effect at the time of contracting controls the rights and duties of the contracting parties. Ross, 82 Ohio St.3d at 281,1998-Ohio-381. The legislation quoted by the trial court was passed and became effective years after the Liberty Mutual policy was issued. The legislation is thus wholly inapplicable to the present case, and the trial court's recitation of the legislative intent was irrelevant to the resolution of the summary judgment motions before it.
 {¶ 24} We are not persuaded by Liberty Mutual's claim that the trial court did not rely on this statute in deciding the motions. The trial court specifically stated that it "must consider" the new statute as evidence that the prior statute failed to fulfill its objective: to "protect and preserve stable markets and reasonable rates for automobile insurance for Ohio consumers." However, this language is drawn from the statute as amended in 2002. Contrary to the trial court's assertion, this was not the objective of R.C. 3937.18 as it existed in 1997. Rather, "the basic purpose of former R.C. 3937.18 was to protect persons injured in automobile accidents from losses, which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." Roper v. StateAuto Mut. Ins. Co., Hamilton App. No. C-010117, 2002-Ohio-3283, at ¶ 33, citing Abate v. Pioneer Mut. Ins. Co. (1970), 22 Ohio St.2d 161,165.
 {¶ 25} We find that the trial court's consideration and application of the statute as amended in 2002 was in error, and accordingly sustain appellants' second assignment of error.
Assignment of Error No. 3
 {¶ 26} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS OVERRULING THEIR MOTION FOR SUMMARY JUDGMENT WHEN THE RECORD REFLECTS NO QUESTIONS OF MATERIAL FACT EXIST WITH RESPECT TO APPELLANT'S CLAIMS."
 {¶ 27} As discussed in our resolution of the first assignment of error, the trial court granted summary judgment to Liberty Mutual based on an incorrect conclusion of law. The trial court, having concluded that Liberty Mutual was entitled to judgment as a matter of law, summarily denied appellants' motion. Considering our resolution of the first assignment of error, we conclude that the trial court prematurely denied appellants' motion for summary judgment. We accordingly sustain the third assignment of error, and remand this matter to the trial court for consideration of the appellants' motion for summary judgment.
 {¶ 28} The judgment of the trial court is affirmed in part, reversed in part and remanded for the trial court to decide the motions for summary judgment consistent with this opinion and law.
VALEN, P.J., and POWELL, J., concur.
[1] Underinsured motorist coverage is defined by the statutory law "in effect at the time of contracting or renewal." Ross v. Farmers Ins. Groupof Cos., 82 Ohio St.3d 281, 1998-Ohio-381, at syllabus. Thus, in the present case, where the contract period began on March 1, 1998, Supervalu's UM/UIM coverage is controlled by R.C. 3937.18, as amended by Am.Sub.H.B. 261, effective September 3, 1997.
[2] Subsequent amendments to R.C. 3937.18 ostensibly removed the offer and rejection requirements of Gyori and Linko. See Am.Sub.S.B. No. 267, effective September 21, 2000, and Am.Sub.S.B. No. 97, effective October 31, 2001.